LOCKWOOD v. POPE.

INJUNCTION—STANDING TIMBER—EVIDENCE.

Evidence *held* to sustain the finding and decree of the trial court dismissing complainant's bill and dissolving an injunction restraining defendants from cutting timber on complainant's farm, under the provisions of a contract for the sale of such timber.

Appeal from Ingham; Collingwood, J. Submitted April 18, 1911. (Docket No. 139.) Decided May 8, 1911.

Bill by Stephen A. Lockwood against George Pope and Benjamin Taylor to restrain defendants from cutting timber on complainant's farm. From a decree dismissing the bill, complainant appeals. Affirmed.

*Jason E. Nichols,* for complainant.

*Gardner & Hood,* for defendants.

STONE, J. The bill of complaint in this cause was filed to restrain the defendants from cutting, removing, or destroying any of the timber and trees on the farm of complainant.

It is undisputed that on or about January 24, 1908, the complainant sold to the defendant George Pope a quantity of standing timber on complainant's farm for the sum of $225, which amount was paid to complainant, $200 having been paid on the day of sale, and the remainder of $25 was paid a day or two later.

The case presents questions of facts only. The bill of complaint states that at the time named complainant sold to the defendant George Pope all standing timber and trees in the wood lot, on his farm, known and designated as the "elm woods," above 14 inches in diameter, at the butt end thereof, excepting and reserving one large standing hickory tree, and also reserving one large oak tree in said "elm woods" lot, and also 25 oak trees standing in the wood lot at the north end of the farm, said lot being known as the "oak woods," and that said trees so sold in said "oak woods" lot were selected by complainant and said George Pope on the day such agreement was made, and many of them, if not all of such oak trees so sold, were then marked, so that said defendant would know the ones he was to have and cut, whenever he should enter upon the premises to cut the same; said marking being then

and there done by said Pope and complainant. The bill further states, that, relying upon the honesty of said Pope that he would not cut any trees except those sold to him, complainant paid no attention to said defendant until about May 1, 1908, when he discovered that said Pope had not only cut all of the trees in the wood lot known as the "elm woods" that were sold to him, and had removed them from said premises, but that said defendant had cut down and removed from said premises the large hickory tree and the large oak tree in said "elm woods" lot, reserved by complainant, and also had cut down and removed a large number of other trees from said lot, not sold to him by the complainant, and that many of the trees so cut down and removed were less than 14 inches in diameter. It is further stated that the said defendant wrongfully entered upon the lot next north of said "elm woods" lot, and, without any right whatever, cut down and removed a large number of large trees, to wit, 15 such trees of great value; and that, without any lawful right or authority, said Pope entered into said "oak woods" lot, and marked for cutting a large number of other valuable standing oak trees, in addition to those complainant sold to said Pope, and in some instances had girdled and destroyed the same, and claimed that he had bought said trees and all sawing timber in said "oak woods" lot, and that he was entitled to cut and remove the same, all of which claims were false. The bill further alleged that said defendant Pope was financially irresponsible. An injunction was issued as prayed for.

Defendants answered and claimed that the defendant Pope entered into an agreement with complainant, wherein and whereby he purchased all the standing timber and trees in the wood lot on the premises described in the bill of complaint as the "elm woods," above 12 inches in diameter at the butt and 24 inches above the ground, except one large standing oak tree which complainant reserved unto himself, which tree was, at the time of filing the bill, standing on the premises; that he also purchased from

complainant certain oak trees standing in the wood lot in the north end of the premises, described in the bill as the " oak woods," all of which last-named trees were at the time of the purchase thereof marked by the said complainant with an axe by hewing the bark or blazing, for which he was to pay, and did pay, $225. Defendants by their answer denied that they or either of them had cut or removed, or attempted to cut or remove, any trees or timber other than that which they purchased from complainant. Defendants averred that complainant was at the premises almost daily, saw and knew what trees and timber were being cut and removed by them, and that he made no objection thereto. They prayed that the bill be dismissed. A general replication was filed, and the testimony was taken in open court.

Upon the hearing the complainant testified, among other things, as follows:

" The bargain between me and Mr. Pope was: I sold him the elm woods, except the maples and the hickories and one oak, and the pasture lot was not sold, and 25 red oak trees, and I was to receive of George Pope $225 for the timber over 14 inches known as the elm woods, all above 14 inches known as the elm woods except maples, hickories, and one oak; for $225, all over 14 inches, 20 inches above the ground. He was not to go outside the fence that surrounded the elm woods lot. That was the agreement. I was to have the pasture lot north of the elm woods lot myself. Mr. Taylor, my wife, and my wife's father were there at the time the bargain was made. After we talked it over, I went down in the back woods with them, took an axe and marked the trees that he could have. I did the marking, did it by hewing off a little piece of bark on the trees he was to have. The trees I marked in the woods lot were all one kind, red oak. There are elms and a few basswood in the so-called woods lot. This was never called the elm woods, the wood lot or pasture lot as I have called it. There were some basswoods in the piece that I have denominated the elm woods. I claim that he had no right to take the hickory, that that was the agreement; and I also claim that he had no right to take any trees from the wood lot just

166 MICH.—2.

north of the elm woods. I also claim he had no right to take any timber below 14 inches, 20 inches above the ground, nothing less than 14 inches through."

A number of witnesses testified on behalf of complainant, including his wife. She claimed to have heard the bargain.

The defendant Taylor testified, in part, as follows:

"On January 28, 1908, Mr. Pope and I were over at the home of the Lockwoods. They made an agreement then about the timber. We talked about what the agreement should be. They had talked about the agreement, and then we went back in the woods. He said he would go back and look the timber over, and they went back, and Mr. Lockwood took his axe. First we went down to the elm lot. We started right out by the house, and went clean up through this rail fence on the north side of the wood lot. Then we passed over a little cleared strip of land to the oak woods. He was to have all there was in this here up to that fence on the north of the wood lot, so called. He was to have the woods in this lot, what they have called the elm woods, and this point south of the wood lot. Then we looked over all the timber and passed to the oak woods. Mr. Pope and I were along with them. They went around to the trees and blazed what they thought was not getting any better, the timber, and then came back up to the house and made the bargain. * * * They talked a little while longer, and they came to the conclusion that $225 would buy it, and drew up the paper. Mr. Pope told Mr. Lockwood that he had better draw up a little paper, so they would know what there was, what he had sold and what he had not. He said, 'Yes,' but didn't know as it made any particular difference. 'Well,' he said, 'that was the right way, and then there would be no misunderstanding.' Pope said that. So they drew up the paper. Pope drew it, and Mr. and Mrs. Lockwood signed it. He paid him $200, and Mrs. Lockwood took the money."

This witness testified that the only interest he had in the matter was that he loaned Mr. Pope the $225 that was paid for the timber, and Pope was to repay him in cut barn timber, as Pope had a mill near by. The writing that was signed was as follows:

"WILLIAMSTON, Jan. 24, 1908.

"Received of George Pope ($200) two hundred dollars in payment of timber described as follows, all the red oak that is marked. All the timber known as elm woods, except one swamp oak, down to 12 inches on stump, 24 inches from the ground.

"S. A. LOCKWOOD.
"MRS. S. A. LOCKWOOD."

Defendant Pope testified that he had talked with complainant about buying the timber before the writing was made; that they went down to mark the trees; that complainant marked them; that after they got back to the house they agreed upon the price; that he suggested a writing, and it was drawn; that he suggested that it state what timber he was to buy; that the writing, when made, was read to complainant and wife; and that both signed it, and the $200 were paid to Mrs. Lockwood. In speaking of the timber, he testified:

"We went through these woods and looked at it. We started in back of the house into this corner. We came down through this elm woods, as they call it now, around up to this corner, and a fence up here. Then we went over the fence and down into the oak woods and looked over the oak trees that he wanted to let go, and then we came back. As we were coming back, we came across the swamp oak that stood there. That is just south of the wire fence, just south of what they call the wood lot, and he says, 'I want to reserve that tree for a stick to put under my barn, as one sill is rotten,' and I says, 'All right.' * * * So when I drew up the writing I mentioned that oak tree he had reserved it, and we agreed upon it. I bought the timber all together. It was all put in together. When we went through the timber it was all called the wood lot, clear from the road back. For that matter, it was all one woods. It was all one elm woods. It was all called the elm woods and pasture lot. It was all called the elm woods clear back. We commenced cutting at what they now call the east part of the wood lot. That was cut off first.

"*Q.* How about this wire fence south of what they denominated the wood lot?

"*A.* Why there was only one wire, if any fence, there at that time. There was one wire. You could see only a little place where there was any wire. Lockwood was down while we were taking timber off from what is known as the woods lot. He was there pretty nearly every other day; I was going to say every day. He never made complaint to me about my taking timber off from the wood lot. The first I learned from him about his complaining about our taking timber off the wood lot, he came down there one day and says, 'I think you are cutting more timber than you ought to.' He says, 'You have cut that hickory tree.' I says, 'Didn't I buy it?' He says, 'No.' 'Well,' I says, 'you go over to Mr. Taylor and look at that paper, and you will find it does not specify any hickory trees that you reserved.' And he says, 'Well, you want to leave that hickory tree.' "

He further testified that he was to have all of the oak trees that were blazed by the complainant, that it was not true that he was to have but 25, and that complainant marked every tree that is marked, and that they were all marked before the paper was signed. Other evidence was offered by the defendants.

We have not here attempted to refer to all of the testimony in the case, but only to give the trend of the testimony of the parties. We have, however, read the record with care. The trial judge, who heard and saw all of the witnesses testify, dismissed the bill of complaint, with costs. Not only was his opportunity to judge of the truthfulness of the testimony of the numerous witnesses better than is ours, but we are content with the conclusion reached by the circuit judge that complainant had not supported his bill of complaint by a preponderance of the evidence. The testimony of the complainant and his wife was not corroborated by the writing signed by them. In fact, they claimed that that instrument had been altered after it was signed by them. An inspection of the original satisfies us that such is not the fact. We have treated this case as did counsel and the trial court, as presenting questions of fact only.

We have considered all of the questions argued by counsel, and are of the opinion that the decree of the circuit judge should be affirmed, with costs to the defendants.

· MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.